# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHERRY LYNN DeTATA, | ) |
| Plaintiff, | ) No. 09 C 5064 |
| v. | ) Judge Rebecca R. Pallmeyer |
| ROLLPRINT PACKAGING PRODUCTS, INC., et al., | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

Plaintiff Sherry DeTata worked for Defendant Rollprint Packaging Products, Inc., for just eight days before being fired, allegedly without explanation. In this lawsuit, DeTata contends her termination was in retaliation for her complaints about a "pervasive pattern of sexual harassment" at the hands of her coworkers. Resolution of that issue has been delayed pending a threshold determination: whether Ms. DeTata's complaint, filed on August 18, 2009, was timely filed within the 90-day period following issuance of her right-to-sue letter from EEOC. This court initially determined that the answer to this question was no. (See Order of 1/29/2010 [45].) Plaintiff appealed, and the Seventh Circuit reversed the court's conclusion that the oral notice Ms. DeTata received from EEOC, confirming that her charge had been dismissed, was sufficient to start the running of the 90-day period. The court remanded, however, for a finding on the question whether notice to an attorney who had assisted her triggered the filing deadline. *DeTata v. Rollprint Packaging Products Inc.,* 632 F.3d 962 (7th Cir. 2011). For the reasons set forth here, the court concludes that Rollprint has not met its burden on this affirmative defense. The case will therefore be reinstated.

**FACTUAL AND PROCEDURAL HISTORY**

The Seventh Circuit opinion describes the procedural history in considerable detail. Because the reviewing court's determinations establish the scope of the issues on remand, the court reviews those determinations in detail.

At the time of her termination, Ms. DeTata met with a friend, Jewell Bracko, a lawyer who held the title of Director of the American Civil Rights Trust ("ACRT"). 632 F.3d at 964. On July 16, 2008, the day after the termination, Bracko wrote to Rollprint, using ACRT letterhead, advising Rollprint that an EEOC charge had been filed on Ms. DeTata's behalf, and directing that any contact with Ms. DeTata take place through "this office." *Id.* In fact, DeTata did not file an EEOC charge until December 2008. *Id.* The intake questionnaire she completed identified Bracko as a "friend" and listed his name and telephone number as that of "a person we can contact if we are unable to reach you." *Id.* In response to the question whether she had consulted an attorney, Ms. DeTata stated that she had contacted ACRT and "was advised by council [sic] to file a complaint with the EEOC." *Id.*

EEOC dismissed the claim and issued a right-to-sue letter on March 2, 2009. *Id.* at 965. The agency sent that letter not to Ms. DeTata, but to Mr. Bracko at the ACRT address in Mississippi. *Id.* Some weeks later, Ms. DeTata called EEOC to ask about the status of her case. The staff person she spoke to told Ms. DeTata that her file was a "mess," but that the agency had dismissed her charge and had issued a right-to-sue letter. *Id.* Ms. DeTata asked that the EEOC send her another copy of the letter, and after a delay, the agency did so. *Id.* This new copy of the March 2 right-to-sue letter, mailed on June 18, 2009, included a notice in which the agency warned that the 90-day period for filing a lawsuit had expired but acknowledged that "you submitted your request timely and the problem was that the file could not be located by our clerk." *Id.*

DeTata filed her *pro se* lawsuit in federal court on August 18, 2009. *Id.* When Rollprint moved to dismiss the complaint as untimely, DeTata argued that EEOC had mishandled her claim and that she herself had been diligent. *Id.* In support, she submitted the declaration of an EEOC employee, Tyrone Irvin, who asserted that Ms. DeTata had contacted EEOC in May 2009, and was advised at that time that the right-to-sue letter had been issued in March. Mr. Irvin explained that EEOC was unable to respond to Ms. DeTata's request for a copy of her file until June 18, 2009 "due to . . . staffing issues." *Id.* He explained, further, that the EEOC investigator had contacted Mr. Bracko during the investigation and was advised that he would be out of the country until late March 2009. *Id.*

After some procedural skirmishing, this court dismissed Ms. DeTata's complaint as untimely, relying on her own testimony about the timing of her telephone conversation with the EEOC, in which she learned that the right-to-sue letter had issued. *Id.* at 966. In sworn testimony, Ms. DeTata stated that the telephone conversation took place in April 2009. *Id.* The Court of Appeals reversed the dismissal, however. The Seventh Circuit pointed out that even if oral notice is sufficient, in some circumstances, to trigger the 90-day period for filing a federal lawsuit, the oral notice that Ms. DeTata received in the spring of 2009 did not constitute such a trigger. There was no evidence, the court noted, that in that conversation the EEOC had (a) notified Ms. DeTata that she had 90 days in which to initiate a lawsuit; (b) advised her of how to proceed with such a case; or (c) furnished a copy of the charge. *Id.* at 969-970. The Seventh Circuit remanded the case for a hearing on Rollprint's alternative argument: that the mailing to Mr. Bracko triggered the complaint-filing deadline because Bracko was Ms. DeTata's legal representative. *Id.* at 970. The mandate from the Seventh Circuit directs that the parties "develop any further evidence that may be relevant to a better understanding of Bracko's role in the case." (Mandate [61.].)

3

**EVIDENCE PRESENTED**

The court conducted an evidentiary hearing on Mr. Bracko's role in June 2011.[1] At that hearing, Plaintiff Sherry DeTata testified that she believes Mr. Bracko was not licensed to practice law in Illinois in 2008. (Transcript of Evidentiary Proceedings on June 17 and June 21, 2011 [81, 82], hereinafter, "Tr.", 8, 23, 87.) Ms. DeTata first met Mr. Bracko at a Britannica store in Chicago in 2008. (Tr. 9.) She consulted him after her termination from Rollprint, and described the circumstances to him. (Tr. 10-11.) He encouraged her to file an EEOC charge, and she did so, but, she testified, she never retained him as an attorney. (Tr. 9, 12.) Mr. Bracko did write a letter to Rollprint on Ms. DeTata's behalf. That letter, which Ms. DeTata reviewed and approved, stated that "a civil rights complaint has been filed through our office on behalf of Ms. Sherry DeTata with the EEOC, . . . ." (Tr. 12-13.) The letter also directed Rollprint to contact Ms. DeTata only "through this office at the above address." (Tr. 14.) Ms. DeTata explained that Mr. Bracko wrote the letter to assist her in her to-then unsuccessful effort to obtain her personnel file.[2] She insists, however, that she never advised EEOC that Mr. Bracko was representing her. (Tr. 78-79.)

Although Ms. DeTata has no recollection of doing so, computer records reflect that she initially contacted EEOC as early as July 2008 and provided information to the agency at that time. (Tr. 52, 53.) She formally filed her charge with EEOC months later, in December 2008. The EEOC file record reflects that Ms. DeTata acknowledged she had consulted with the American Civil Rights Trust about her claim. (Tr. 19-20.) EEOC investigator Katarzyna Cychowska sent an e-mail message to Bracko on January 29, 2009, requesting information.

---

[1] The court itself lost track of the case until prompted by a recent contact from counsel. The delay is regrettable, and the court apologizes to the parties, who were diligent in pursuing this case and have been courteous in awaiting a ruling.

[2] Ms. DeTata testified that she said "go ahead. Send them a letter. I have tried to call HR several times. No responses. I even sent my own letter initially, before this letter, and I had no responses from HR." (Tr. at 15; see also Tr. 86.) The court notes, however, that Ms. DeTata met with Mr. Bracko just a day after her termination from Rollprint. Precisely when she made her own multiple phone calls and sent her own letter is unexplained.

(Tr. 20-24.)  According to Ms. DeTata, Bracko never communicated with her about that request. (Tr. 24-25.)  Yet on February 14, 2009, Ms. DeTata herself furnished the requested information to the EEOC by fax, attaching copies of correspondence with Mr. Bracko, which she referred to as "my attorney's letters." (Tr. 28.)  Those letters included Mr. Bracko's communication with Ms. Cychowska that he intended to "send my team of investigators in and send my findings to your director in Chicago." (Tr. 30.)  He signed his letter with the name "Jewell G. Bracko, Esq." (Tr. 31.)

Near the end of April 2009, Ms. DeTata contacted EEOC to ask about the progress of her case. (Tr. 36.)  The person to whom she spoke advised her that her file was missing; Ms. DeTata testified that there may also have been a reference to a right-to-sue letter, but Ms. DeTata felt she could not be certain of this because the file was missing. (Tr. 37, 38; 84-85; 93.)  On May 3, 2009, Ms. DeTata wrote to Sylvia Bustos at the EEOC, making an "official request" for a copy of her file–a request that Defendant deems powerful evidence that Ms. DeTata had indeed seen the right-to-sue notice by then; that notice would have included Ms. Bustos' name as the person to whom such a request should be made. (Tr. 116-17.)

Tyrone Irvin holds the title of Enforcement Supervisor for the EEOC.  He testified that Ms. DeTata met with him personally in May 2009, when she came to the EEOC office to ask that the agency issue a second right-to-sue notice. (Tr. 46.)  Irvin recalls that she had documents with her during this meeting, including the right-to-sue letter that the agency had sent to Mr. Bracko, complete with the original envelope and a certified mail sticker reflecting unsuccessful delivery attempts on March 9 and March 19, 2009. (Tr. 46.)  Mr. Irvin's observation that Ms. DeTata had that envelope made him suspicious of her claim that she had not received the right-to-sue letter earlier. (Tr. 48.)  The EEOC's own case log contains no notation reflecting return of the original right-to-sue notice (Tr. 68-69); in fact, EEOC produced a United States Postal Service tracking confirmation that the notice of right to sue was delivered in Mississippi on March 5, 2009. (Tr. 110.)  When Mr. Irvin asked Ms. DeTata how she had gotten

5

the letter, he recalls, she told him that she had received it from EEOC—but this would be a departure from standard practice, as EEOC does not ordinarily provide original documents from its files. (Tr. 47.) And as the court understands the evidence, Ms. DeTata had not received any of her file materials from the EEOC as of May 2009.

Ms. DeTata's efforts to obtain a new right-to-letter were unsuccessful. Mr. Irvin testified that he told Ms. DeTata the EEOC would not "reissue a new right-to-sue with another date on it because everything in the file indicates that we served it on the proper person." (Tr. 49.) He says that in response, Ms. DeTata denied that Mr. Bracko was representing her. (Tr. 49.) DeTata herself insists the only in-person meeting she ever had with Mr. Irvin took place in October 2009, after this suit was filed. (Tr. 41, 93.) And, though EEOC practice requires that staff make a notation in the case log of any contact with a complainant, Irvin acknowledged that he made no written notation of his meeting with Ms. DeTata in May. (Tr. 64.)

## ANALYSIS

As noted earlier, the Seventh Circuit's remand order asks for a determination of Jewell Bracko's role in Ms. DeTata's EEOC charge. The evidence on this issue is, in the court's view, inconclusive. There is no evidence that Mr. Bracko filed a formal appearance with the agency. Bracko did use "Esq." in at least one letter to the EEOC, and he accepted communications from the EEOC on Ms. DeTata's behalf. She testified that she was unaware of these communications, but has not effectively explained the fact that she responded promptly to a request for information that the EEOC had sent only to Mr. Bracko. In fax communications with the agency, she referred to Mr. Bracko as "my attorney." And, as Rollprint points out, in May 2009, she made a request for her file to Sylvia Bustos, whose name she would have seen on a right-to-sue letter sent to Mr. Bracko (but which she asserts was never received by him).

Defendant Rollprint bears the burden of proof on this affirmative defense, however, and on this record, the court is unable to conclude that Mr. Bracko's role was sufficiently formal that the EEOC's mailing of a right-to-sue letter to Mr. Bracko triggers the 90-day period for filing of

Ms. DeTata's complaint in this court. First, there is room to doubt that Mr. Bracko received the letter at all: EEOC records make no mention of a delivery failure, and United States Postal Service records appear to confirm delivery, as well; but Ms. DeTata has submitted a certified mail envelope directed to Mr. Bracko that contains notations of three unsuccessful delivery attempts by USDS. Despite Mr. Irvin's testimony that original documents were never provided in response to a file request (Tr. 44), Ms. Detata insists she received the envelope from EEOC when she received her complete file in June 2009. (Tr. 74.) And, unless those non-delivery notations were forged, Ms. DeTata could not have received the envelope from Mr. Bracko.

The court is uncertain, as well, precisely why the notice was directed to Mr. Bracko in the first place. Ms. DeTata identified him as "a friend" on the EEOC intake documents and did not otherwise furnish his name and address to the agency as her legal representative. Her reference to him as "my attorney" in correspondence with the agency may have generated confusion, but it does not change this court's conclusion on the issue; a lay person may well use an expression such as "you will hear from my attorney" without intending for the attorney to receive communications on his/her behalf. There is no evidence that EEOC advised Ms. DeTata that it would communicate only with Mr. Bracko. Such a warning is part of what Mr. Irvin referred to as the standard "spiel to charging parties," but he acknowledged that whether the warning is given is "left up to human error . . . ." (Tr. 50.)

The only written explanation for the EEOC's decision to communicate with Ms. DeTata through Mr. Bracko appears in a declaration submitted by Mr. Irvin during briefing of Defendant's original motion to dismiss. (Amended Complaint [39] at 18.) That declaration makes no reference to any direction from Ms. DeTata or Mr. Bracko that Bracko would be acting as her attorney before the EEOC. Instead, Mr. Irvin's declaration notes only that Ms. DeTata had provided the EEOC with a copy of Mr. Bracko's July 16, 2008 letter *to Rollprint*. His declaration goes on to offer an explanation for Mr. Bracko's purported failure to receive the

7

right-to-sue notice: "According to our [EEOC's] records, in February 2009, Mr. Bracko informed the EEOC that he would be out of the country, in Brazil, at least until the end of March 2009."

Regardless where Mr. Bracko was in March 2009, Rollprint contends that Ms. DeTata was aware that a right-to-sue letter had issued no later than May. The Court of Appeals assumed this, as well, however, but nevertheless reversed this court's dismissal order. That she was aware of the issuance of the notice, the court observed, does not mean that Ms. DeTata also understood the next steps or the process for filing a complaint. As evidence that she did understand these things, Rollprint presented Mr. Irvin's testimony concerning a meeting in May 2009 at which Ms. DeTata reportedly had possession of the original envelope that contained the notice that had been sent to Mr. Bracko. But Ms. DeTata insists that she met with Mr. Irvin only once, in October 2009. And Irvin's failure to document the meeting in the EEOC's log renders the court unable to credit his testimony over hers. Rollprint notes, further, Ms. DeTata's May 2, 2009 request for her EEOC file. The fact that she directed that request to Sylvia Bustos may show that she had access to the right-to-sue notice on May 2. As Rollprint itself emphasizes, however, Ms. DeTata has filed EEOC charges against other employers in the past. (Tr. 14.) She may well have been aware of Ms. Bustos's role on some basis other than the right-to-sue letter purportedly sent to Mr. Bracko in this case.

It is undisputed that Mr. Bracko never filed a formal appearance with the EEOC. The EEOC unquestionably communicated with him, and Bracko responded. Moreover, though Ms. DeTata denies it, the court assumes that she had at least some contact with him when these communications were exchanged. These circumstances do not, however, satisfy the court that notice to Mr. Bracko of the issuance of a right-to-sue letter constituted notice to Ms. DeTata herself.

## **CONCLUSION**

Mr. Bracko did not file an appearance on Ms. DeTata's behalf. Ms. DeTata's communications with the agency also did not constitute clear notice that Mr. Bracko was her

8

legal representative. For purposes of the 90-day window, the right-to-sue notice is deemed issued in June 2009, rendering Ms. DeTata's August 2009 complaint timely. The Clerk is directed to reinstate this case, and Defendant Rollprint is directed to answer the complaint within 21 days. A Rule 16 conference is set for January 8, 2015, at 9:30 a.m.

ENTER:

Date: December 1, 2014

REBECCA R. PALLMEYER
United States District Judge